Antone Singletary was indicted on one count of aggravated robbery, one count of aggravated burglary, and four counts of kidnaping. Each count carried a firearm specification. Pursuant to plea negotiations, Singletary pleaded guilty to the aggravated robbery and aggravated burglary counts in return for a dismissal of the four kidnaping counts and the six firearm specifications. Prior to sentencing, Singletary orally moved to withdraw his guilty pleas. After listening to Singletary's reasons for withdrawing his pleas of guilty, the trial court overruled Singletary's motion and sentenced him consecutive sentences of eight and seven years.
On appeal, Singletary advances three assignments of error and statements of issues for review as follows:
Assignment of Error 1
 Denial of the Motion to Withdraw Plea without hearing was prejudicial in view of the allegations of inducements and ethical conflicts.
STATEMENT OF THE ISSUES PRESENTED FOR REVIEW:
 A. The trial court committed prejudicial error by denying the Motion to Withdraw Plea without a hearing especially in light of the serious allegations raised about the inducements and promises of the detectives and/or the allegations raised in defense counsel's Motion to Withdraw.
 Assignment of Error 2
 The Trial Court left unresolved serious ethical considerations.
STATEMENT OF THE ISSUES PRESENTED FOR REVIEW:
 B. The Trial Court committed prejudicial error in failing to hold hearing and/or rule on the serious ethical allegations raised by defense counsel in his Motion to Withdraw, in which one allegation mandates withdrawal, the other two being permissive.
 Assignment of Error 3
Appellant was denied effective counsel.
STATEMENT OF THE ISSUES PRESENTED FOR REVIEW:
 C. Prejudicial error occurred when defendant's attorney stood mute and refused to go forward, to such an extent it constitutes ineffective representation and that the interests of justice would be best served by having the matter returned de novo to the trial calendar.
Because the arguments in support of the assignments overlap to some extent, we will discuss the assignments together.
The pertinent history of this case is as follows. Singletary was indicted January 6, 1998, for an incident that occurred November 9, 1997. On February 3, 1998, Singletary, his counsel, and the prosecutor entered into a pretrial agreement and stipulation providing that Singletary would submit to a polygraph examination, that the results would be admissible into evidence, and that the charges would be dismissed if the examiner found Singletary's denial of involvement in the crime to be truthful. Singletary took the polygraph examination on February 6, and the examiner found his responses relating to the alleged offenses to be indicative of deception. On March 13, the trial court scheduled the case for trial May 18 at 9:00 a.m. On March 19, 1998, the trial court overruled Singletary's motion to suppress evidence after a hearing at which the adult victim, Tanika Thompson, identified Singletary as one of the assailants on November 9. Trial court continued the trial date to May 20 at 1:00 p.m. On May 20 at 9:22 a.m., defense counsel moved to withdraw as counsel for Singletary. Counsel complained that Singletary's lack of cooperation and inaction had made it impossible to prepare a defense, and that Singletary had recently made a statement to the police that he acknowledged was false. Counsel stated he was required to withdraw by DR2-110(B)(2), (C)(1)(c)(d), and (C)(2). Later on May 20, Singletary, accompanied by defense counsel, entered pleas of guilty to aggravated robbery and aggravated burglary, in return for the dismissal of the four kidnaping counts and the six firearm specifications. (The May 20 plea proceeding was before a visiting judge). In connection with these pleas, the prosecutor and defense stated the following.
 MR. POHLMAN: Your Honor, we are set for trial this date and at this point the State has entered into plea negotiations with counsel for the Defendant. Uh, it is my understanding that the Defendant is willing to give, and will so do, a sworn statement under oath as to his involvement in this offense which occurred on November the 9th, 1997. Now, the plea agreement is thus, and it is expressly conditioned on these three factors. His full cooperation in naming all people involved in the aggravated burglary, aggravated robbery, at 2467 Thornton Drive, herein Dayton, Montgomery County, Ohio on November the 9th, 1997. It's further conditioned upon confirmation by uh, police investigation and lie detector examination, any and all information provided by this Defendant to, uh, to the detective, Bilinski, in this matter. Furthermore, it's also expressed the condition that at the request and the option of the State, that this Defendant provide truthful testimony in any and all hearings and/or trials related to this offense. In return for performing those three stipulations, those purposed and that's my understanding the Defendant will agree to that, the State will permit the Defendant to plead guilty to count one, being aggravated robbery, and to count two being aggravated burglary, both felonies of the first degree and the State in turn would nolle counts three, four, five, and six of the indictment plus all gun specifications that are on the indictment including those affixed to count one and count two. And, uh, that is the State's understanding of the purposed plea agreement your honor.
 THE COURT: That's your understanding of the, uh, agreement Mr. Knapp?
 MR. KNAPP: The only other thing that I wanted to put on the record your Honor is that, uh, by giving the testimony that my client is going to be doing, it places both himself and his family in grave danger, and we had asked that, that whatever security measures can be taken, be taken so as to protect him, uh, and then we'll see about dealing with his family at the same time.
 MR. POHLMAN: That's agreeable your Honor. We will make, we will do our, exert out best efforts provided the Defendant do as well. In terms of fulfilling this plea agreement.
After the trial court conducted the Crim. R. 11 colloquy with Singletary, he made the following sworn statement:
 Okay, On the evening in question there were three gentlemen that got together, myself, um, Ruben, or Big Country is his nickname, I don't know his last name, and a Mr. De Leon. The discussion that we had was to enter into Ms. Thompson's address and either find drugs or find a large amount of cash there. Supposedly in a safe or wherever we could find it. We entered the house, the three of us together at first, later it was myself, and Country, uh, Mr. Ruben. I don't know his last name, one of the detectives is going to try and find that out. Um, we held Ms. Thompson at bay while . . . he, while I stood there and watched her while he ransacked the house. Yes I did have a firearm, but I did not point that firearm at her in anyway, in any means I tried to threaten her. The only thing I did was just stood there. Uh, upon us not finding what we went into the house to find, we left. Well, actually, I left first and Mr. De Leon and Mr. Ruben, Country, they left after I did. I left in the Oldsmobile, they stayed behind. Now whether Mr. De Leon was seen or could be identified in the house, I'm not sure because I can't testify to that particular fact. But I know he was there. I took the car out to a location at West Carrollton. It was a convenience store, either a Starv'in Marvin or a SuperAmerica which I can't remember which cause I didn't really pay attention to the name. I sat in the car then and waited for Ruben to come back and pick me up in my automobile. We left that automobile there and then I took him home and later I went home. That's pretty much it.
At the conclusion of the plea proceedings, the trial court continued the matter to June 4 for a presentence investigation and sentencing. On June 4, in open court with Singletary present without counsel, the trial court continued the matter for sentencing at the State's request. At that time, Singletary orally moved "to dismiss Mr. Knapp as my attorney due to the fact that he asked me to submit to a statement that is false." The trial court did not act on Singletary's motion at that time.
On June 18, Singletary was before the court for sentencing with his counsel. At that time, Singletary protested his innocence of the charges, which the trial court treated as a motion to withdraw guilty pleas. Although counsel did not assist Singletary in presenting his protestation of innocence, Singletary did accept the trial court's invitation to further consult with counsel, and the matter was continued to June 23. On June 23, Singletary and counsel were again before the trial court for sentencing. Again, counsel did not assist Singletary in presenting his reasons for withdrawal of his guilty pleas. Singleton referred to promises made at the plea proceeding relating to "name change, relocation, (and) possibly requesting probation," and said that the State wasn't honoring its commitment. The trial court indicated it had reviewed the May 20 plea proceedings, which had been before a visiting judge, and the presentence investigation. The trial court admitted the polygraph stipulation and polygraph results into evidence. (The trial court had presided over the March 13 suppression hearing). In overruling the motion to withdraw pleas from the bench, the trial court stated:
 Mr. Singletary, the law of Ohio is that before sentencing the Court has the discretion to entertain motions to withdraw a plea. Those motions, however, must be based on a legitimate and factual presentation that would, in the Court's opinion, invalidate the plea that was previously made. My review of all of the factual material, which includes the presentence investigation report submitted to the Court, and the Court will mark this as a Court exhibit in this matter, as well as the stipulated polygraph, the results of that, the procedure where you entered your plea before Judge Elliott, which was quite thorough and quite knowledgeable on your part as you entered that plea, as well as the testimony of the complainant in the case, which was quite adamant as far as your identification is concerned, convinces the Court that there are no legitimate factual issues that are presented to permit the withdrawal of the guilty plea in this case.
The trial court then imposed sentence as stated above.
In our judgment, the record belies the contention that the trial court denied Singletary's motion to withdraw his guilty pleas without a hearing. Although defense counsel did not assist Singletary in presenting his reasons for withdrawing his guilty pleas, the trial court certainly afforded Singletary ample opportunity to address it personally as to his reasons for wanting to withdraw his pleas. Nor can it be said, or does Singletary argue, that the trial court did not give full and fair consideration to his motion to withdraw guilty pleas. See State v.Peterseim (1980), 68 Ohio App.3d 211. Turning to the question of whether Singletary was denied the effective assistance of counsel by his counsel's not participating in his motion to withdraw guilty pleas, we apply the two prong test of Strickland v.Washington (1984), 466 U.S. 668. It seems obvious to us from this record that counsel had negotiated a very favorable plea agreement for Singletary. The adult victim had identified Singletary as one of her and her children's assailants, and a polygraph had shown Singletary's denial of involvement to have been deceptive. Under these circumstances, one might reasonably ask whether "effective assistance of counsel" requires counsel to assist a criminal defendant in pursuing a course which in counsel's judgment is not in the defendant's best interest. We needn't answer this question in this case because on this record, Singletary has failed to satisfy us that there is a reasonable probability that had counsel assisted Singletary in his attempt to withdraw his guilty pleas, he would have been successful. Strickland, supra, second prong. Although trial courts must be deferential to presentence motions to withdraw guilty pleas, there is nevertheless no absolute right to withdraw a guilty plea; rather, there must be a reasonable and legitimate basis for doing so. State v. Xie (1992), 62 Ohio St.3d 521.
The trial court expressly stated that Singletary had not established a sufficient basis to justify withdrawal of his guilty pleas. His protestation of innocence was contradicted by the adult victim's identification of him as one of the assailants, his failure of the polygraph examination, and his sworn statement during the May 18 plea proceeding wherein he admitted his guilt of the crimes to which he had pleaded guilty. Singletary's contention that the State was not honoring its commitment as to relocation and name change was, according to Singletary, something he learned "through the detective." At the May 18 plea proceeding, the State committed itself to exerting its best efforts to protect Singletary and his family. Supra. The trial court certainly could have credited the prosecutor's commitment in open court over Singletary's statement, based on vague hearsay, that the State was not honoring its commitment. Nothing of record suggests which, if any, detective would have backed up Singletary's contention that the State was not honoring its commitment as to the security of him and his family. Finally, Singletary's contention that probation was to be suggested in return for his cooperation was undercut by his statement during the plea proceedings that no promises had been made to induce his pleas of guilty other than the dismissal of the four kidnaping counts and the six firearm specifications. Indeed, the tenor of the Crim. R. 11 colloquy between the visiting judge and Singletary suggested that he would indeed be sentenced to prison.
While Singletary contends that there are several things that counsel could have done to assist him, he points to nothing in the record, e.g. specific favorable witnesses, that demonstrates that had counsel done certain things rather than remaining mute, the motion would have been granted. In the absence of any demonstration from the record before us that counsel's assistance could have made a difference in the trial court's disposition of Singletary's motion to withdraw his guilty pleas, we conclude that he was not denied the effective assistance of counsel.
Singletary also claims error in the failure of the trial court to dispose of the ethical issues raised in counsel's May 20 motion to withdraw as counsel. This motion was made earlier on the same day trial was to begin. The language of the disciplinary rules cited by counsel is as follows:
DR 2-110
* * *
(B) Mandatory withdrawal.
 A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:
* * *
 (2) He knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule.
* * *
(C) Permissive withdrawal.
 If DR 2-110(B) is not applicable, a lawyer may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because:
(1) His client:
* * *
 (c) Insists that the lawyer pursue a course of conduct that is illegal or that is prohibited under the Disciplinary Rules.
 (d) By other conduct renders it unreasonably difficult for the lawyer to carry out his employment effectively.
* * *
 (2) His continued employment is likely to result in a violation of a Disciplinary Rule.
On the record before us, we can only conclude that counsel's motion to withdraw as counsel was made in anticipation of a trial actually going forward, wherein Singletary would insist that counsel pursue a course of action that would result in disciplinary violations. We can also only conclude that Singletary's pleas of guilty obviated the ethical concerns that prompted counsel's motion to withdraw as counsel. At the plea proceeding, Singletary stated his satisfaction with his counsel's advice and competence, and counsel did not thereafter seek to withdraw from Singletary's representation although counsel did decline, as noted, to assist Singletary in his attempt to withdraw his pleas. Hence, there was no error prejudicial to Singletary in the failure of the trial court to rule on counsel's motion to withdraw as counsel.
From our review of the record, the trial court could have reasonably determined that Singletary failed to establish a reasonable and legitimate basis for withdrawal of his guilty pleas. Rather, he appears at most to have had a change of heart. See State v. Lambros (1988), 44 Ohio App.3d 102, 103.
The assignments of error are overruled.
The judgment will be affirmed.
BROGAN, J. concurs.